UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ASHLEY WOOD,

       Plaintiff,

v.

                                 Case No:   8:23-cv-01850-JLB-CPT

JACOBS TECHNOLOGY INC.,

       Defendant.

                                    /

## **ORDER**

Before the Court is Defendant Jacobs Technology Inc.'s ("Jacobs Technology")

Motion for Summary Judgment (Doc. 73).  Plaintiff Ashley Wood alleges that Jacobs

Technology discriminated against her because of her race and retaliated against her

following a workers' compensation claim.  (Doc. 66).  After careful review of the

Complaint, the parties' briefing, the entire record, and application of the *McDonnell*

*Douglas* burden-shifting analysis[1] and, in the alternative, the "convincing mosaic of

circumstantial evidence"[2] analysis, Jacobs Technology's Motion for Summary

Judgment is **GRANTED**.

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (establishing a burden-shifting framework for Title VII discrimination and retaliation claims).

[2] *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 946 (11th Cir. 2023) (establishing that a plaintiff who cannot meet the *McDonnell Douglas* standard can still prove her case with a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker") (citation omitted).

## BACKGROUND

Ms. Wood, a black woman, began working as a systems administrator for Jacobs Technology at a military base in Afghanistan in June 2019, spending most of her tenure at the Camp Sullivan base in Kabul. (Doc. 84 at ¶¶ 4, 44). Jacobs Technology contracted its services to the United States Government's Special Operations Command to provide information technology support. (*Id.* at ¶ 2). In her role as systems administrator, Ms. Wood functioned as an IT "Help Desk" specialist. (Doc. 74-8 at 9, 23). In that role at Camp Sullivan, Ms. Wood answered phone calls and provided tier-one support to the Government, including creating user accounts, assisting with computer applications, and resolving individual user IT issues. (Doc. 84 at ¶ 7). To maintain her international assignment, Ms. Wood was required to comply with the host country's work visa and immigration requirements and any requirements imposed by the United States. (*Id.* at ¶ 8; Doc. 74-3 at 11–16). If Ms. Wood failed to satisfy these requirements, her assignment could be terminated. (Doc. 84 at ¶ 8).

Ms. Wood alleges that she was subjected to discrimination because of her race throughout her employment with Jacobs Technology. Specifically, in January 2020, Ms. Wood emailed Human Resources regarding issues with U.S. military personnel. (Doc. 74-3 at 16–20; Doc. 74-2 at 24). Ms. Wood admits, however, that she did not complain of race discrimination at that time. (Doc. 74-2 at 26–27). In March 2020, Ms. Wood again emailed Human Resources, complaining that Chief Petty Officer Joseph Teson ("CPO Teson") was "treat[ing] people like we are his children." (Doc.

84 at ¶ 11; Doc. 74-3 at 25–26). The entirety of Ms. Wood's email complaint took issue with being unable to clock hours while getting her hair done on a different base, while men were able to clock hours because they could get their hair cut on base. (Doc. 74-3 at 25–26). Again, at no point did Ms. Wood complain that this was because of her race. (Doc. 74-2 at 30–31).

Ms. Wood further alleges that CPO Tenson implemented several rules targeting her because of her race under the guise of generalizing the rules to all contractors. Such rules, which Jacobs Technology enforced, included a ban on wearing headphones, a requirement to document bathroom breaks, and restrictions on lunch breaks. (Doc. 66 at ¶¶ 24, 27; Doc. 74-2 at 45–47). In response, Jacobs Technology investigated Ms. Wood's complaints through interviews with her and other contractors. (Doc. 84 at ¶ 15; Doc. 74-2 at 34–37). Additionally, in light of Ms. Wood's complaints, the Project Manager, Mr. Neal, offered her a comparable position in Germany. (Doc. 84 at ¶ 16; Doc. 74-2 at 35; Doc. 74-4 at 1–4). She declined the offer, citing concerns about moving to Europe during the height of the COVID-19 pandemic. (Doc. 74-4 at 3).

On June 1, 2020, Mr. Neal emailed several employees, including Ms. Wood, about an open systems engineer position in Bagram, Afghanistan. (Doc. 74-1 at 12). Ms. Wood applied for the position, which she admits would have been a promotion from her current position. (*Id.* at 13; Doc. 74-2 at 21). The Bagram systems engineer position was not a "help desk" position and required: (1) a Microsoft-certified engineer, (2) Security+ certification, and (3) a computer science degree or

3

eight years of related work experience.  (Doc. 84 at ¶ 22; Doc. 74-9 at 10; Doc. 74-1 at 12).  Ms. Wood admits she does not have a college degree and lacked the requisite experience.  (Doc. 84 at ¶¶ 23–24; Doc. 74-1 at 7).  Indeed, Mr. Neal testified that a systems administrator based in Afghanistan operates at a lower level than the same position in a different country.  (Doc. 74-8 at 23, 25).  Thus, a person like Ms. Wood moving from a systems administrator position in Afghanistan to a systems *engineer* position is not only a promotion but also a larger "leap" than someone moving from a systems administrator position in another country to a systems engineer position.  (Doc. 74-8 at 23).

In all events, a systems engineer focuses on software and hardware capabilities.  (*Id.*).  And Jacobs Technology did not hire Ms. Wood for the Bagram systems engineer position.  (Doc. 74-1 at 4, ¶ 13).  Notably, Ms. Wood testified that she does not believe that she was rejected for the Bagram systems engineer position because of her race.  (Doc. 74-2 at 23).

On June 20, 2020, Ms. Wood submitted her letter of resignation, effective July 7, 2020.  (*Id.* at 53; Doc. 74-4 at 17).  The resignation letter made no mention of discrimination or harassment.  Upon receiving the resignation, Jacobs Technology notified the U.S. government that the Camp Sullivan systems administrator role was now vacant.  (Doc. 84 at ¶ 29).  In turn, the government removed funding for the position as part of its policy to reduce its presence in Afghanistan.  (*Id.*).

On June 21, 2020, Ms. Wood complained to a supervisor, Kevin Sawyer, that a coworker was sexually inappropriate with her.  (Doc. 74-2 at 39).  Mr. Sawyer

notified Human Resources, who investigated and terminated the accused employee. (*Id.* at 39–40; Doc. 84 at ¶ 31).

In light of her complaint, Human Resources reached out to Ms. Wood to ask whether she had resigned due to this incident, and she confirmed that she had. (Doc. 84 at ¶ 32; 74-2 at 39–40).  In response, Jacobs Technology informed Ms. Wood that she could apply for an open position in Qatar despite having already resigned. (Doc. 74-2 at 18–19).  Ultimately, she was not offered the position in Qatar because Jacobs Technology learned that Qatar had placed an indefinite hold on issuing work visas due to COVID-19.  (*Id.* at 19, 41).  Ms. Wood admits that she could not fill the position in Qatar because she was unable to obtain a work visa.  (*Id.*).  She also testified that she does not know of other employees who were hired for a position in Qatar without a work visa.  (*Id.* at 20, 23).  Ms. Wood alleges, however, that she was not selected for the Qatar position due to her race.  She infers this because another employee, Don Santi, was allowed to wait in Bagram for a future position in Bahrain, but she was not allowed to wait in Bagram for a future position in Qatar. (*Id.* at 19; Doc. 84 at ¶ 44).  However, Mr. Santi, who is also black, had not resigned from his position in Bagram and therefore could continue working there while he waited for a work visa for Bahrain.  (Doc. 84 at ¶ 44; Doc. 74-2 at 13–14, 18).

In addition to her race discrimination claim, Ms. Wood alleges workers' compensation retaliation.  (Doc. 66 at ¶¶ 58–67).  On July 11, 2020, Ms. Wood was in a car accident in Bagram and sustained several injuries.  (Doc. 74-2 at 53–54).  A week later, she reported the incident to Jacobs Technology and filed a workers'

compensation claim under the Defense Base Act ("DBA").  (*Id.* at 54–55).  On July 27, 2020, Jacobs Technology offered Ms. Wood 90 days of unpaid company convenience leave to give her time to search for an open position with the company that catered to her skills.  (*Id.* at 40–41; Doc. 74-4 at 16).  During this period, Ms. Wood did not apply to any jobs with Jacobs Technology.  (Doc. 74-2 at 44). Accordingly, her employment with Jacobs Technology ended in October 2020.  (*Id.* at 57).

Jacobs Technology moved for summary judgment (Doc. 73).  Ms. Wood responded in opposition (Doc. 75), and Jacobs Technology replied (Doc. 83).

## LEGAL STANDARD

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A district court must grant a motion for summary judgment only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Essex Ins. Co. v. Barrett Moving & Storage, Inc.*, 885 F.3d 1292, 1299 (11th Cir. 2018) (citation and internal quotation marks omitted).  "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case," and "[a]n issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party."  *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004) (citations

6

omitted).

The moving party "has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013).  If that burden is met, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citation and internal quotation marks omitted).  Unsupported conclusions and factual allegations are insufficient to create a genuine issue of material fact. *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

In reviewing a motion for summary judgment, a court must "view the evidence in the light most favorable to the non-moving party and resolve all reasonable doubts about the facts in favor of the non-movant." *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 920 F.3d 704, 707 (11th Cir. 2019) (citation omitted).

## DISCUSSION

Jacobs Technology moves for summary judgment on both counts, arguing that Ms. Wood has not provided sufficient allegations or evidence to support her claims.  The Court agrees.

### I.    Race Discrimination.

A race discrimination claim may be analyzed under the *McDonnell Douglas*

7

framework or through demonstration of a convincing mosaic.  Because Ms. Wood argues that she has successfully established both, the Court evaluates her claim under both standards.

### A. *McDonnell Douglas.*

Ms. Wood alleges that Jacobs Technology discriminated against her pursuant to 42 U.S.C. § 1981 because of her race by subjecting her to different rules and adverse treatment, denying promotional opportunities, and prohibiting transfer to open positions.  (Doc. 66 at ¶¶ 47–59).

To establish race discrimination, the plaintiff must present direct or circumstantial evidence of such discrimination.  "Direct evidence is evidence, that, if believed, proves the existence of discriminatory intent without inference or presumption." *Jefferson v. Sewon Am., Inc.,* 891 F.3d 911, 921 (11th Cir. 2018) (citation omitted) (cleaned up).  "To be direct evidence, the remark must indicate that the employment decision in question was motivated by race." *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1227–28 (11th Cir. 2002).  "As a result, 'only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age' will constitute direct evidence of discrimination." *Damon v. Fleming Supermarkets Of Fla., Inc.*, 196 F.3d 1354, 1359 (11th Cir. 1999) (quoting *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)).  The Court finds that Ms. Wood has not presented direct evidence of racial discrimination. Therefore, the Court turns to evaluating any circumstantial evidence of racial discrimination claim using the *McDonnell Douglas* framework.  *See Jefferson*, 891

F.3d at 921–22 ("[C]ircumstantial evidence only suggests, but does not prove, a discriminatory motive, and may be evaluated under the burden-shifting test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 (1973)") (citation omitted).[3]

Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden to establish a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). This requires the plaintiff to show: "(1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated 'similarly situated' employees outside her class more favorably." *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (citation omitted). Jacobs Technology disputes that Ms. Wood was qualified to perform the Bagram systems engineer position in the first instance, arguing that she has otherwise failed to show that it treated a similarly situated employee more favorably. (*See* Doc. 73 at 12–20). The Court agrees.

Ms. Wood was not qualified for the Bagram systems engineer position and, therefore, cannot establish a *prima facie* case for racial discrimination against Jacobs Technology for not offering her the position. To show that she was qualified

---

[3] "Section 1981 discrimination claims that rely on circumstantial evidence are evaluated under the *McDonnell Douglas* burden-shifting framework." *Carlisle v. Rhodes & Rhodes Fam. Dentistry*, No. 22-13901, 2024 WL 621421, at *4 (11th Cir. Feb. 14, 2024); *see Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009) ("[D]iscrimination claims . . . brought under the Equal Protection Clause, 42 U.S.C. § 1981, or Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, are subject to the same standards of proof and employ the same analytical framework.").

for the position, Ms. Wood must "show that . . . she satisfied an employer's objective qualifications." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 769 (11th Cir. 2005). The job advertisement provides guidance on the objective skills required for the position in question. *See Santillana v. Fla. State Ct. Sys.*, No. 6:09-CV-2095-ORL-19, 2011 WL 722765, at *16 (M.D. Fla. Feb. 23, 2011). According to the Bagram systems engineer job posting, a qualified candidate must be Microsoft-certified, hold a Security+ certification, and have a computer science degree or eight years of related work experience. (Doc. 84 at ¶ 22; Doc. 74-9 at 10; Doc. 74-1 at 12). Not only does Ms. Wood not attempt to argue that she had these qualifications at the time she applied, but she also admits that she did not. (Doc. 84 at ¶¶ 23–24; Doc. 74-1 at 7). Ms. Wood is therefore unable to demonstrate racial discrimination on this basis. *See e.g.*, *MackMuhammad v. Cagle's Inc.*, 379 F. App'x 801, 804 (11th Cir. 2010) (affirming the district court's order granting summary judgment in favor of the employer where the plaintiff "did not produce evidence sufficient to show that he was qualified for the superintendent position.").

Moreover, when asked during her deposition whether she believes she was rejected for the Bagram systems engineer position because she is black, Ms. Wood responded, "No." (Doc. 74-2 at 23). This unequivocal testimony waives her claim that Jacobs Technology racially discriminated against her by not offering her the Bagram systems engineer position. *See Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007) ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff

10

remains at all times with the plaintiff."); *Ross v. Jefferson Cnty. Dep't of Health*, 701 F.3d 655, 661 (11th Cir. 2012) (holding that the plaintiff waived her Title VII racial discrimination claim because she responded "no" during a deposition when asked whether she felt that her termination was due to her race); *Peters v. HealthSouth of Dothan, Inc.*, 542 F. App'x 782, 787 (11th Cir. 2013) (holding that the plaintiff's testimony that "she did not believe [her supervisor] had discriminated against her because of her race" warranted summary judgment in favor of the employer for the discriminatory discharge claim).

Nor has Ms. Wood established a *prima facie* case that Jacobs Technology did not transfer her to Qatar because of her race.  Ms. Wood offers no similarly situated employee outside of her protected class who Jacobs Technology allowed to transfer. "To show that employees are similarly situated, the plaintiff must show that the employees are similarly situated in all relevant respects." *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003).  The only comparator Ms. Wood offers is Mr. Santi, who, like Ms. Wood, was a black employee.  (Doc. 75 at 17–18; Doc. 84 at ¶ 44).  Thus, Ms. Wood has not pointed to someone *outside of her protected class* who was treated more favorably.  Notwithstanding, Mr. Santi held a different position, was transferred to a position other than the one Ms. Wood applied for, and *had not resigned before securing his transfer* to Bahrain, which allowed him to continue working in Bagram while he waited for his work visa. (Doc. 74-2 at 13–14, 18–19; Doc. 84 at ¶ 44).[4]

---

[4] In her Response, Ms. Wood argues that her white colleagues Alan Dos Santos and Maurice Knight "received positions without interviews or superior qualifications."  (Doc. 75 at 15).

Moreover, Ms. Wood acknowledges that the reason she could not transfer to Qatar was because she was unable to obtain a work visa. (Doc. 74-2 at 19, 41). She further testified that she knew of no other employees who transferred to Qatar without first obtaining a work visa. (Doc. 74-2 at 20, 23, 41).

Ms. Wood's other allegations of racial discrimination likewise fail. Specifically, Ms. Wood contends that CPO Tenson implemented rules for contracting employees to target her because of her race, which Jacobs Technology enforced. (Doc. 66 at ¶¶ 24, 27; Doc. 74-2 at 45–47). These rules included not allowing headphones, requiring documentation of bathroom use, and restricting lunch breaks. Ms. Wood has neither presented a sufficient comparator for any of these allegations of racial discrimination, nor has she attempted to offer a comparator in the first instance. Thus, she has failed to meet her burden.

To the extent that Ms. Wood brings these allegations as racial harassment claims rather than racial discrimination, her claim still fails. (*See* Doc. 66 at ¶¶ 51) (alleging that Jacobs Technology's actions constitute racial discrimination and harassment). To show racial harassment, the plaintiff must show that "(1) that

---

Plaintiff offers no citation to the record in support of this proposition and does not expand on how these colleagues are sufficient comparators. It is the party's responsibility to point the Court to record evidence of its arguments. *Atlanta Gas Light Co. v. UGI Utils., Inc.*, 463 F.3d 1201, 1208 n.11 (11th Cir. 2006) ("[T]he district court . . . has [no] obligation to parse a summary judgment record to search out facts or evidence not brought to the court's attention."). Notwithstanding, the Court has reviewed the record and finds that Ms. Wood has not presented sufficient evidence that Dos Santos or Knight are sufficient comparators. The sole mention of Dos Santos is during Plaintiff's deposition, where she testified that she was denied a different position and that she believes she was rejected from that position because she is female—not because of her race. (Doc. 74-2 at 51–52). There is no mention of Knight.

[s]he is a member of a protected class; (2) that [s]he was subjected to unwelcome racial harassment; (3) that the harassment was based on h[er] race; (4) that the harassment was severe or pervasive enough to alter the terms and conditions of h[er] employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for the environment under a theory of either vicarious or direct liability." *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1248–49 (11th Cir. 2014).

Ms. Wood has not shown that any of these rules were targeting her because of her race. When testifying about not being able to wear headphones, she said, "I know it was because of me, but he didn't directly say" and then went on to admit that *all* contracting employees were subject to the rule. (Doc. 74-2 at 45). When testifying about being required by CPO Tenson to document bathroom use, she likewise could not say whether it had anything to do with her race, instead reasoning that "no one else had a complaint" about the rule, so it must have been to target her because of her race. (*Id.* at 46). Regarding the lunch restriction, Ms. Wood testified that she relieved an employee in the office after her lunch break and was told by another employee that CPO Tenson asked where she was and for how long she had been gone. (*Id.* at 47). Viewed in light most favorable to Ms. Wood, none of these instances support racial harassment. Certainly, these are not so severe and pervasive as to have altered the terms and conditions of her employment.

Whether an environment is severe or pervasive enough to constitute racial

13

harassment requires "an environment that a reasonable person would find hostile or abusive." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). This is a high burden. Indeed, "mere utterance of an . . . epithet which engenders offensive feelings in a employee . . . does not sufficiently affect the conditions of employment . . . ." *Id.* at 371 (citation and internal quotation marks omitted). Rather, such harassment must be "commonplace, overt and denigrating and so pervasive and shocking in this more enlightened day that they altered the conditions of employment and created an abusive working environment . . . ." *E.E.O.C. v. Beverage Canners, Inc.*, 897 F.2d 1067, 1070 (11th Cir. 1990). Ms. Wood has not demonstrated that any of her allegations of racial harassment rise to the level of being severe or pervasive. (*See* Doc. 74-2 at 47) (testifying that CPO Tenson never made comments about her race and admitting that the rules with which she took issue were meant for all contracting employees, not singling her out).[5]

### B. Convincing Mosaic.

In the alternative, Ms. Wood argues that she has established convincing

---

[5] The Court recognizes that Ms. Wood attempts to bring new claims in her Response. (*See* Doc. 75). For instance, Ms. Wood argues that she was sexually assaulted, and that Jacobs Technology retaliated against her for reporting it. (*Id.* at 7). The Amended Complaint brings no such claim. (*See generally* Doc. 66). The Court will not consider it now. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a). A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."). Ms. Wood also attempts to argue that she was racially discriminated against because she was not able to get her hair done on a different base while simultaneously on the clock while men were allowed to get haircuts during work on the base. (Doc. 75 at 7–8). Again, there is no mention of this allegation in Ms. Wood's Amended Complaint. (*See generally* Doc. 66). In any case, her own argument and testimony confirms that this was a gender issue—not racial. (Doc. 74-2 at 49) (testifying that "[m]ales were able to clock hours for their harcuits" but females could not). The Amended Complaint does not bring a gender discrimination claim.

14

mosaics of circumstantial evidence to support her claim. (Doc. 75 at 11). Certainly, even if the claims fail under the *McDonnell Douglas* framework, "a plaintiff will always survive summary judgment if he presents . . . a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination." *Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1185 (11th Cir. 2019) (citation and internal quotations omitted). A "convincing mosaic" may be shown by evidence that demonstrates, among other things, "(1) suspicious timing, ambiguous statements . . ., and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Id.* (citation and internal quotations omitted).

As discussed, Ms. Wood has not presented sufficient evidence of comparators, nor has she provided evidence of ambiguous statements or suspicious timing to create a convincing mosaic. *See supra* Part I.A. Indeed, she testified that none of Jacobs Technologys' employees made any remarks about her race. (Doc. 74-2 at 44). The only argument Ms. Wood makes that Jacobs Technology's justifications were pretextual is that she was denied promotions due to "open investigations" on her discrimination complaints. (Doc. 75 at 16). Ms. Wood cites no record evidence to support this argument. In fact, the record establishes that the opposite is true. (*See e.g.*, Doc. 84 at ¶ 32; 74-2 at 18–19, 39–40) (Jacobs Technology informed Ms. Wood that she could apply to the open position in Qatar despite having already resigned once they learned that she resigned because of her sexual harassment

15

complaint); (Doc. 84 at ¶ 16; Doc. 74-2 at 35; Doc. 74-4 at 1–4) (offering Ms. Wood a comparable position in Germany following an investigation of her complaints, which she declined).  Accordingly, Ms. Wood has not established a convincing mosaic of racial discrimination.

## II.    Workers' Compensation Retaliation.

Ms. Wood brings a claim for workers' compensation retaliation pursuant to the Florida Workers Compensation Act ("FWCA").  (Doc. 66 at ¶¶ 58–67); Fla. Stat. § 440.205.  Specifically, Ms. Wood alleges that following her car accident and subsequent filing of a workers' compensation claim under the DBA, Jacobs Technology retaliated against her by withdrawing its offer to transfer her to Qatar and terminating her employment in July 2020.  (Doc. 66 at ¶ 62).

"To establish a *prima facie* case of retaliation under . . . the FWCA, a plaintiff must show that: '(1) [s]he engaged in a statutorily protected expression; (2) [s]he suffered an adverse employment action; and (3) there was a causal link between the adverse action and h[er] protected expression.'" *Hardin v. Oakley Transp., Inc.*, 773 F. Supp. 3d 1320, 1341–42 (M.D. Fla. 2025) (quoting *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1260 (11th Cir. 2001)).

Despite Ms. Wood's contentions, the evidence does not support that she was terminated or otherwise subjected to an adverse action.  Rather, she submitted a voluntary resignation on June 20, 2020, with an effective date of July 7, 2020.  (Doc. 74-2 at 53; Doc. 74-4 at 17).  Ms. Wood admits this fact.  (Doc. 74-2 at 53; Doc. 84 at ¶ 28).  Jacobs Technology later provided Ms. Wood with the opportunity to remain

16

in her position unpaid through October 2020 to give her time to find a different position with the company. (Doc. 74-2 at 40–41, 44; Doc. 74-4 at 16). Because she did not apply to any jobs during this time, her employment ended in October 2020. (Doc. 74-2 at 44, 57). Not until July 11, 2020, was Ms. Wood involved in a car accident, and it was a week after that when Plaintiff made a workers' compensation claim. (*Id.* at 53–55). This was well after she was not offered the position in Qatar and rejected from the Bagram systems engineer position. Thus, neither of those instances supports Ms. Wood's argument that they occurred because of her workers' compensation claim. Accordingly, Ms. Wood has not shown that she was subjected to an adverse action and therefore has failed to prove a *prima facie* case for workers' compensation retaliation. *See Rademakers v. Scott*, 350 F. App'x 408, 413 (11th Cir. 2009) (holding that the employee did not demonstrate adverse action where he voluntarily resigned).

Moreover, Jacobs Technology argues, and the Court agrees, that Ms. Wood cannot bring a workers' compensation claim under the FWCA because she never made a "valid claim for compensation or attempt[ed] to claim compensation under the *Workers' Compensation Law*." Fla. Stat. § 440.205 (emphasis added); *see Hardin*, 773 F. Supp. 3d at 1341 (quoting Fla. Stat. § 440.205) ("Florida law prohibits an employer from retaliating against an employee 'by reason of such employee's valid claim for compensation or attempt to claim compensation **under the FWCA**."). Instead, Ms. Wood made her workers' compensation claim under the DBA, which extends workers' compensation coverage under the Longshore Harbor

17

Workers' Compensation Act ("LHWCA") to federal contractors injured while working abroad.  33 U.S.C. § 901; 42 U.S.C. § 1651.  The DBA includes an exclusivity clause stating that "[t]he liability of an employer . . . under this chapter shall be exclusive and in place of all other liability of such employer . . . to his employees . . . under the workers' compensation law of any State, Territory, or other jurisdiction . . . ."  42 U.S.C. § 1651(c).  The DBA incorporates the LHWCA's language prohibiting workers' compensation retaliation: "It shall be unlawful for any employer . . . to discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim compensation from such employer. . . ."  33 U.S.C. § 948(a).

Thus, Ms. Wood's exclusive remedy for workers' compensation retaliation is provided under the DBA.  *See Sickle v. Torres Advanced Enter. Sols., LLC*, 884 F.3d 338, 348 (D.C. Cir. 2018) ("[T]he Base Act provides its own remedy for claims that an employer retaliated 'because such employee has claimed or attempted to claim compensation from such employer. Allowing [a plaintiff] two bites at the retaliation apple would upset the balance that Congress struck.") (citation and internal quotation marks omitted); *LeSassier v. Chevron USA, Inc.*, 776 F.2d 506, 509 (5th Cir. 1985) ("[T]here is no authority permitting appellant to invoke the state retaliatory discharge remedy over its LHWCA counterpart.").

## CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment (Doc. 73) is **GRANTED**.  The Clerk of Court is **DIRECTED** to enter judgment accordingly,

18

deny any pending motions as moot, terminate all deadlines, and close the case.

**ORDERED** in Tampa, Florida, on March 24, 2026.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE